LILLIAN B. TAUGHER v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, and Edwin P. Olson, Peter Kerner and Edwin P. Olson, Daniel Preszler and Adam Bollinger.

(129 N. W. 747.)

**Trial — Evidence — Credibility of Witness — Impeachment — Cross-Exam-- ination.**

1. In an action for damages for conversion of grain by a common carrier, in-

Note.—For various phases of the question of conversion by carrier, see notes in 3 L.R.A.(N.S.) 1135; 6 L.R.A.(N.S.) 1048; and 18 L.R.A.(N.S.) 494.

trusted to it for transportation, one of the defenses relied upon by appellant was that the grain did not belong to the plaintiff consignor, but was the property of one C. In attempting to make proof of such ownership after proper foundation laid, and after C. had testified that the grain all belonged to plaintiff, C. was interrogated as to whether he had made statements to the effect that he owned the grain. *Held:* That such questions were proper as going to the credibility of C. as a witness, when offered for that purpose, and that it was reversible error of the trial court to sustain objections to such questions.

**Common Carriers — Failure to Deliver Freight — Evidence — Contract.**

2. On proof of delivery of property to a common carrier in sound condition, and of its failure to redeliver it, a sufficient case is made to sustain a recovery for loss in an action by the shipper on his contract, with certain exceptions, which have no application in this case, but other and different proof may be necessary in such case to sustain an action for conversion against the carrier.

**Trover and Conversion — Words and Phrases — "Conversion."**

3. To constitute conversion, there must be a positive tortious act, a tortious detention of personal property from the owner, or its destruction, or an exclusion or defiance of the owner's right, or the withholding of possession under a claim of title inconsistent with that of the owner.

**Common Carriers — Failure to Deliver — Action on Contract.**

4. The gist of the action on the contract in such case is the failure to deliver, while the gist of an action in trover is the conversion, and the mere showing of a breach of contract may not prove conversion.

**Carriers — Trover and Conversion — Election of Remedies — Burden of Proof — Damages.**

5. If a shipper elects to sue for conversion and fails to establish the elements necessary to constitute conversion, his action must fail unless his complaint states facts necessary to sustain a recovery on the contract or some other proper form of recovery, as the burden is on the shipper, when he seeks the benefit of the measure of damages for conversion, to prove the act of conversion.

**Common Carriers — Conversion — Proof of Demand and Failure to Deliver.**

6. While proof of a demand and refusal to deliver the property or thing may establish conversion in connection with other facts, the demand and refusal are only evidence of conversion when the defendant was in such condition that it might have delivered the property if it would, and conversion does not lie against a common carrier for mere nonfeasance nor for goods stolen from the carrier, not for negligence causing the loss, nor for bare omission.

**Common Carriers — Attachment of Goods Carried — Duty to Notify Shipper.**

7. When goods in transit are taken from the carrier by an officer under a writ of attachment against a third party, it is incumbent on the carrier, in an

action for conversion, to give immediate notice to the shipper, and on failing to give such notice so as to enable the shipper to protect himself, the carrier assumes the burden of establishing the legality of the proceedings on which the attachment was made, and the fact that the writ was regular on its face does not protect the carrier if such writ was in law void.

**Justice of the Peace — Attachment — Time of Issuance — Jurisdiction.**

8. A justice of the peace acquires no jurisdiction to issue a writ of attachment until the summons in the action is issued, as attachment is a provisional or dependent remedy which has no existence until the commencement of an action.

**Common Carriers — Failure to Deliver Goods — Attachment — Proof of Value.**

9. When delivery by a carrier to an officer, under a valid writ of attachment, constitutes conversion, proof of the value of the property delivered, as of the date delivered to the officer, is competent proof of value to support a recovery.

**Chattel Mortgages — Delivery of Mortgaged Property to Apply on Debt — When Lawful.**

10. In the absence of other existing liens on property, a mortgagor may legally surrender the mortgaged property to the mortgagee and authorize its sale and the application of the proceeds to the mortgage debt, though no default has occurred in the terms of the mortgage.

**Justice of the Peace — Attachment — Issue Prior to Delivery of Summons — Evidence.**

11. A justice's summons bore date two days after the date of filing, with the justice, of the complaint, affidavit, and undertaking for attachment, and issuance of the writ of attachment. *Held:* That on the offer of such papers in evidence in an attempt to show that they were simultaneously issued, it was not error to exclude them from evidence.

**Justice of the Peace — Docket Entries — Best and Secondary Evidence — Parol Evidence to Impeach Record.**

12. Section 8350, Rev. Codes 1905, requires a justice of the peace to keep a docket and enter therein in continuous order, with the proper date, each act done during the course of litigation, and § 8351 provides that the docket so kept cannot be disputed in a collateral proceeding; that it or a duly certified transcript thereof is competent evidence of the matters of which it relates. *Held:* That the sections referred to make such docket the best evidence of the facts required to be and which are entered therein by the justice, and that, in the absence of any offer of such docket or a transcript thereof, as evidence, no attempt being made to account for its absence, parol evidence is not admissible, under the facts disclosed, to show that the summons was in fact issued simultaneous with the issuance of a writ of attachment.

Opinion filed November 23, 1910.   Rehearing denied January 28, 1911.

21 N. D.—8.

Appeal from the District Court of Stutsman county; *Burke, J.*

Action by Lillian B. Taugher against the Northern Pacific Railway Company and others for the conversion of flax shipped by plaintiff over defendant's railroad. The defendant, the Northern Pacific Railway Company, appeals from a judgment in favor of plaintiff and an order denying a new trial.

Reversed, and a new trial granted.

*Ball, Watson, Young, & Lawrence,* for appellant.

Neglect of duty is not necessarily conversion. 28 Am. & Eng. Enc. Law, pp. 682, 683; Marshall v. Andrews, 8 N. D. 364, 79 N. W. 851; Magnin v. Dinsmore, 70 N. Y. 410, 26 Am. Rep. 608; Moses v. Norris, 4 N. H. 304; Central R. & Bkg. Co. v. Lampley, 76 Ala. 357, 52 Am. Rep. 334; Hawkins v. Hoffman, 6 Hill, 586, 41 Am. Dec. 767; Angell, Carr. §§ 431–433; Scovill v. Griffith, 12 N. Y. 509; Ross v. Johnson, 5 Burr. 2825; Bowlin v. Nye, 10 Cush. 416; Hett v. Boston & M. R. Co. 69 N. H. 139, 44 Atl. 910; McAlister v. Chicago, R. I. & P. R. Co. 74 Mo. 363.

Default is essential to mortgagee's right to possession. Parker v. First Nat. Bank, 3 N. D. 90, 54 N. W. 313.

It is error to refuse the recall of a witness to lay foundation for impeachment. Queen's Case, 2 Brod. & B. 299, 22 Revised Rep. 662; 10 Enc. Pl. & Pr. p. 284; State v. Nixon, 47 La. Ann. 836, 17 So. 303; Covanhovan v. Hart, 21 Pa. 495, 60 Am. Dec. 57; Harvey v. State, 37 Tex. 365; 10 Enc. Pl. & Pr. pp. 285, 286; Kimmey v. Calloway, 52 Ala. 222; Wisconsin Planing Mill Co. v. Schuda, 72 Wis. 277, 39 N. W. 558; Updyke v. Wheeler, 37 Mo. App. 680; Gilmour v. Heinze, 85 Tex. 76, 19 S. W. 1075; Tucker v. Welsh, 17 Mass. 160, 9 Am. Dec. 137; 10 Enc. Pl. & Pr. p. 283; Bartlett v. Cheesebrough, 32 Neb. 339, 49 N. W. 360; Kennedy v. Wood, 52 Hun, 48, 4 N. Y. Supp. 758; Boyd v. Boyd, 9 Misc. 161, 29 N. Y. Supp. 7; Kreiter v. Bomberger, 82 Pa. 59, 22 Am. Rep. 750.

Carrier must surrender freight to an officer with process valid on its face. 4 Elliott, Railroads, pp. 139, 140, 280, 281, 493, 494; Hutchinson, Carr. § 327; 2 Hutchinson, Carr. pp. 821, 822, 824, 825, 827, 828, and cases cited; Merz v. Chicago & N. W. R. Co. 86 Minn. 33, 90 N. W. 7; McAlister v. Chicago, R. I. & P. R. Co. 74 Mo. 363; Mears v. Cornwall, 73 Mich. 78, 40 N. W. 931; Pin-

gree v. Detroit, L. & N. R. Co. 66 Mich. 143, 11 Am. St. Rep. 479, 33 N. W. 298; Drake, Attachm. §§ 290, 350, 453; Jewett v. Olsen, 18 Or. 419, 17 Am. St. Rep. 745, 23 Pac. 263; Southern R. Co. v. Heymann, 118 Ga. 616, 45 S. E. 491.

*Lee Combs,* for respondent.

Carrier's delivery of freight to an unauthorized person is conversion. Central R. & Bkg. Co. v. Lampley, 76 Ala. 357, 52 Am. Rep. 334; Griswold v. Haven, 25 N. Y. 595, 82 Am. Dec. 380; Gibbons v. Farwell, 63 Mich. 344, 6 Am. St. Rep. 301, 29 N. W. 855; Cooley, Torts, 441, 448, 534; Edwards, Bailments, 162; Cooley's Bl. Com. 150, notes; Angell, Carr. 290, 292; Fisher v. Kyle, 27 Mich. 454; Bullard v. Young, 3 Stew. (Ala.) 46; Indianapolis & St. L. R. Co. v. Herndon, 81 Ill. 143; Illinois C. R. Co. v. Parks, 54 Ill. 294; Esmay v. Fanning, 5 How. Pr. 228; Coykendall v. Eaton, 55 Barb. 188; Bissell v. Starr, 32 Mich. 298; Edwards v. Frank, 40 Mich. 616; Hicks v. Lyle, 46 Mich. 488, 9 N. W. 529; Barnum v. Stone, 27 Mich. 336; Merz v. Chicago & N. W. R. Co. 86 Minn. 33, 90 N. W. 7; Angell, Carr. 223.

Seizure under an invalid process is no defense. Kiff v. Old Colony & N. R. Co., 117 Mass. 591, 19 Am. Rep. 429; Gibbons v. Farwell, 63 Mich. 344, 6 Am. St. Rep. 301, 29 N. W. 855; Horn v. Corvarubias, 51 Cal. 524; Mathews v. Densmore, 43 Mich. 461, 5 N. W. 669; Oberfelder v. Kavanaugh, 21 Neb. 483, 32 N. W. 295; Howe v. Freeman, 14 Gray, 566; Merz v. Chicago & N. W. R. Co. 86 Minn. 33, 90 N. W. 7; Great Western R. Co. v. McComas, 33 Ill. 185; Denver, S. P. & P. R. Co. v. Frame, 6 Col. 382.

Carrier's failure to notify shipper of seizure renders former absolutely liable. Robinson v. Memphis & C. R. Co. 16 Fed. 57; Merz v. Chicago & N. W. R. Co. 86 Minn. 33, 90 N. W. 7; Thomas v. Northern Pacific Exp. Co. 73 Minn. 185, 75 N. W. 1120.

Dealing with property so as to deprive lien holder of it is conversion. Donovan v. St. Anthony & D. Elevator Co. 7 N. D. 513, 66 Am. St. Rep. 674, 75 N. W. 809; Ellestad v. Northwestern Elevator Co. 6 N. D. 88, 69 N. W. 44; Sandager v. Northern Pacific Elevator Co. 2 N. D. 3, 48 N. W. 438.

SPALDING, J. This is an appeal by one of the defendants, the

Northern Pacific Railway Company, from a judgment in favor of the plaintiff, Lillian B. Taugher, and from an order overruling and denying said defendant's motion for judgment notwithstanding the verdict, or for a new trial. The action was brought against the Northern Pacific Railway Company, a corporation, Peter Kerner, and the firm of Olson, Preszler, & Bollinger. The complaint, omitting the formal parts, alleges that on or about the 3d day of January, 1908, plaintiff was the owner and in possession of 550 bushels of flax at the village of Crystal Springs, North Dakota, of the value of $561, and that on said day and at said place she delivered said flax to the defendant railway company as a common carrier of freight, and caused it to be loaded in one of its cars, No. 4,077, to be by it transported for her to Duluth, Minnesota, upon the customary terms; that on the same day she was entitled to the possession of 374 bushels of other flax at the village of Crystal Springs, and was then and there in possession thereof, and then and there delivered the same to the said railway company, together with the flax above mentioned, and loaded it in the same car with the first-mentioned flax; that said company received all such flax and undertook to transport it to Duluth for the plaintiff upon the usual terms, etc., and then and there gave plaintiff a bill of lading therefor, and that the value of the flax last mentioned was $381.48. The complaint then sets forth the plaintiff's right of possession as resting upon a chattel mortgage duly executed, delivered, and filed, covering the last-mentioned flax, and that the conditions of such mortgage and the note secured thereby were in default. It alleges the conversion of the said flax between the 3d and 7th days of January, 1908, at or near the village of Medina, North Dakota, by each and all of the defendants, and a demand thereafter made therefor, and its refusal, and prays judgment for the value of the flax and interest. The defendant and appellant, the Northern Pacific Railway Company, answered admitting that on January 3, 1908, there was delivered to it a car load of flax consigned in the name of the plaintiff to the consignee at Duluth, Minnesota, and alleging that it had no knowledge or information sufficient to form a belief as to the allegations contained in the complaint as to the amount, value, and ownership thereof, or of the nature and extent of the plaintiff's interest and rights therein, and denied all other

allegations. Defendant Peter Kerner answered, denying every allegation of the complaint not admitted, qualified, or explained, and attempted to justify the taking of 327 bushels and 40 pounds of flax, alleging that it belonged to one Christianson and was in a Northern Pacific car at Medina, as constable of Stutsman county on or about the 4th of January, 1908, under an execution (evidently meaning writ of attachment), issued by one Tood, justice of the peace. The defendants Olson, Preszler, & Bollinger answered in substantially the same form as defendant Kerner, except that they attempted to justify the taking of 327 bushels and 40 pounds under a writ of attachment delivered to Kerner as constable and the seizure thereof under such writ, and a sale to satisfy a judgment rendered on the 10th of January, 1908. Neither of the answers identifies any of the flax shipped by the plaintiff. A trial was had in district court and questions were submitted to the jury, namely:

1. Was there any difference in amount in the grain put into the car at Crystal Springs by Christianson and the amount of grain taken out thereof on the following Monday at Medina? This was answered in the affirmative.

2. If so, what was the amount of the difference? The answer to this question was 503 bushels gross, and a general verdict was returned in favor of the plaintiff and against all of the defendants, assessing her damages at $835.33, with interest from the 4th of January, 1908, on which verdict judgment was entered. The defendant, the Northern Pacific Railway Company, appeal separately. The other defendants are not in this court.

We seldom have an appeal before us in which the record contains so confusing a mass of objections, motions, and offers. It contains 79 assignments and 137 specifications of error. The objections of plaintiff to questions, and the motions to strike out answers, in most instances, fail to specify adequately the grounds on which they are based. We infer from the briefs that many of them made by respondent were intended to be directed to the admissibility of testimony or evidence of justification under the answer of appellant, but they are invariably inadequate to raise that question. We are at a loss to determine whether the appellant defended the action on the theory that it could justify the delivery of the grain to a third party under

its own general denial, or that it might do so under the attempted pleas of justification contained in the answers of the other defendants. We set forth enough of the facts to show the theories of the prosecution and defense, and our conclusions on the controlling question properly before us, but omit consideration of many which we deem immaterial.

It appears that the plaintiff and one Christianson owned two adjoining quarter sections of land about one and a half miles from Crystal Springs station in Kidder county. The plaintiff resides during the winter in Minneapolis, Minnesota, and the remainder of the year on her land near Crystal Springs. The flax first referred to in the complaint was grown on her land, and that last referred to, on the land belonging to Christianson. Christianson did the work of cultivating her land and harvesting the crop, and on the 4th day of January, 1908, plaintiff's testimony shows that he completed by her instruction the loading of the flax raised on both places, into a car of the defendant railway company at Crystal Springs, for which he took a bill of lading in the name of the plaintiff, the flax being consigned by her direction to a firm in Duluth. It was not weighed on shipment. Both plaintiff and Christianson testified that the flax grown on the plaintiff's land belonged to her, and that he was hired to do the work on her place during the season of 1907. She held Christianson's note for $1,000, bearing date May 24, 1907, and due on or before April 1, 1908, secured by chattel mortgage covering the flax raised on his land during the season of 1907. This mortgage bore even date with the note and contained the usual provisions. Plaintiff and Christianson testified that, by agreement between them, he turned over to her the flax covered by such mortgage, and it was to be sold with the flax raised on her land, and the proceeds of the mortgaged flax retained by her to apply on the indebtedness covered by the mortgage. When the car reached Medina station, 8 miles from Crystal Springs, on Saturday, the 4th of January, it was side tracked, and on Monday, the 6th, all the flax then in the car was attached by the defendant Kerner, as constable of Stutsman county, on the writ of attachment referred to in the pleadings, at the suit of the firm of Olson, Preszler, & Bollinger, instituted in justice court upon a debt due from Christianson to said firm. All the flax then in the

car was removed, judgment was obtained against Christianson, and the flax sold on the 10th of February, 1908, and the proceeds paid into justice court. The affidavit and undertaking for attachment and complaint bore date and were filed in such court on the 4th of January, 1908, but the summons bore date January 6, 1908, and the sheriff's return showed that the papers came to his hands on the latter date.

1. It is contended by the appellant that there is no misconduct shown on its part which constitutes an act of conversion such as is necessary to sustain the action of trover. There was much testimony submitted regarding the amount of flax removed from the car at Medina and the amount shipped, but no direct evidence showing what became of the difference of 503 bushels found by the jury, except that Christianson testified that when the loading was completed at Crystal Springs, he procured locks, and closed and locked the car doors. He and others testified that the flax covered the highest grain mark, and reached a point about 2 feet below the roof on the car. It was shown that, when the car reached Medina and when the attachment was levied, one of the outer doors was partially open, and only about 2 feet of flax in the car, but men employed on the train, some of whom rode in the caboose, testified that they had seen none upon the track and none leaking from the car, while it was being picked up at Crystal Springs or switched in the yards at Medina, and there was no indication of the car being leaky. An inland common carrier is an insurer against loss of property consigned to it for carriage, between its receipt at shipping point and arrival at destination, when unaccompanied by the consignor, except through loss occasioned,

1. By an inherent defect, vice, or weakness, or spontaneous action of the property itself.

2. The act of a public enemy of the United States or of this state.

3. The act of the law, or

4. Any irresistible superhuman cause. Section 5690, Rev. Codes 1905. Duncan v. Great Northern R. Co. 17 N. D. 610, 19 L.R.A. (N.S.) 952, 118 N. W. 826. On proof of the delivery of the property to the carrier in sound condition, and of the failure to redeliver it, a sufficient case is made to sustain a recovery for loss by the shipper, and the burden is upon the carrier to exonerate itself from lia-

bility in case of loss, by showing that such was occasioned by one or more of the exceptions mentioned. Duncan v. Great Northern R. Co. supra. The loss being shown, the burden would fall upon the appellant, in a proper action, to excuse itself on some of the grounds above mentioned. It failed to do so as to the 503 bushels of flax. The plaintiff, having proved the delivery and failure to redeliver, would be entitled to recover in an action on her contract or some other suitable form of action, but does it entitle her to recover in an action for the conversion of the 503 bushels? To constitute conversion there must be a positive tortious act, a tortious detention of personal property from the owner, or its destruction, or an exclusion or defiance of the owner's right, or the withholding of possession under a claim of title inconsistent with that of the owner. 8 Wait, Act. & Def. 1194; Bolling v. Kirby, 90 Ala. 215, 24 Am. St. Rep. 789, 7 So. 914; Terry v. Binghamton Nat. Bank, 30 Am. St. Rep. 87 and note (93 Ala. 599, 9 So. 299); 2 Kinkead, Torts, § 582; Tinker v. Morrill, 39 Vt. 477, 94 Am. Dec. 345; Magnin v. Dinsmore, 70 N. Y. 417, 26 Am. Rep. 608. The gist of an action on the contract is the failure to deliver, but the gist of this action is the conversion. Bigelow Co. v. Heintze, 53 N. J. L. 69, 21 Atl. 109. To maintain the action some wrongful act on the part of the appellant must be shown. The mere showing of a breach of contract does not necessarily prove conversion, though the defendant may be liable on the contract. The rules of evidence and measure of damages are not the same in an action for conversion and in one on the contract for carriage. A common carrier is liable for loss of property in transit in many instances where it is chargeable with no wrongful act, and even where its loss is without fault of the carrier, but the shipper is confined in such cases to the proper remedy. In most cases more than one remedy is applicable, and he has his election, while in others an action for conversion does not lie though one for damage for breach of contract may. If the shipper elects to sue for conversion, and is unable or fails to establish the elements necessary to constitute conversion, he must fail in that form of action. The burden is on the shipper, when he elects to seek the benefit of the measure of damages in an action charging conversion, to prove the act of conversion by showing a wrongful disposition or wrongful withholding of the property. Moore, Carr.

217; Wamsley v. Atlas S. S. Co. 168 N. Y. 533, 85 Am. St. Rep. 699, 61 N. E. 896; Tinker v. Morrill, 39 Vt. 477, 94 Am. Dec. 345; Magnin v. Dinsmore, 70 N. Y. 417, 26 Am. Rep. 608; Whitney v. Slauson, 30 Barb. 276. In such case the demand and refusal may be prima facie evidence of the conversion, or, when the other facts warrant it, of course may establish the conversion, but the demand and refusal are only evidence of conversion where the defendant was in such condition that he might have delivered the property if he would. Tinker v. Morrill and Whitney v. Slauson, supra; Hawkins v. Hoffman, 6 Hill, 586, 41 Am. Dec. 767; 24 Am. St. Rep. note page 807. The action for conversion for failure to deliver or return on demand does not lie against a carrier for a mere nonfeasance when the non-feasance of the defendant was the cause of the loss of the goods, nor does it lie for goods stolen from the carrier nor for negligence causing the loss. It must be for an actual wrong, an injurious conversion, something more than a bare omission. Goldbowitz v. Metropolitan Exp. Co. 91 N. Y. Supp. 318; Hawkins v. Hoffman, 6 Hill, 586, 41 Am. Dec. 767; Abraham v. Nunn, 42 Ala. 51; Dearbourn v. Union Nat. Bank. 58 Me. 273; Yale v. Saunders, 16 Vt. 243; Moses v. Norris, 4 N. H. 304; Packard v. Getman, 4 Wend. 615, 21 Am. Dec. 166; Bailey v. Moulthrop, 55 Vt. 13; Bowlin v. Nye, 10 Cush. 416; Tinker v. Morrill, 39 Vt. 477, 94 Am. Dec. 345; Magnin v. Dinsmore, 70 N. Y. 417, 26 Am. Rep. 608; Whitney v. Slauson, 30 Barb. 276. It is unnecessary to review these authorities. The cases of Wamsley v. Atlas S. S. Co. and Tinker v. Morrill and authorities therein cited and quoted are directly in point, and we conclude that plaintiff failed to establish the conversion of the 503 bushels of flax. As we have indicated, she still has her remedy in a proper action. The complaint in this case will not justify a recovery upon the contract.

2. Appellant contends that it is not liable in this action for the flax attached by the officer. In this we think it is mistaken. As before observed, the appellant did not plead justification; and in view of the importance of this question, and of the fact that only three members of this court participate in this decision, and that the objections by respondent to evidence were, in our opinion, inadequate and too indefinite to raise the question, we shall not pass upon the necessity of pleading justification. If the appellant wrongfully delivered

the flax attached, to the officer, it is clear, under the authorities, that this constitutes an act of conversion, and, as under the pleadings and facts disclosed no demand was necessary, the date of the conversion was the date of the delivery, rather than the date of the demand. Wellman v. English, 38 Cal. 583; Moore v. Murdock, 26 Cal. 515; Ledley v. Hays, 1 Cal. 160; Boulware v. Craddock, 30 Cal. 190. Appellant urges that the process or writ by which the flax was attached and taken was regular upon its face, and that this is as far as the appellant or the court is required to investigate in deciding this question. We have spent much time in an effort to determine what the law is as applicable to the facts disclosed, and have concluded that it is unnecessary to pass upon the regularity of this writ and its justification of the appellant. The authorities, so far as we find them referring to the subject, are uniform in holding that something more than the regularity of the writ of attachment on its face may be necessary. The carrier must notify the shipper of the taking of the property, so as to enable him to protect himself by making a defense or otherwise, and, on the failure of the carrier to give such notice, it either becomes absolutely liable or assumes the burden of proving the regularity of all proceedings on which the attachment rested. Without intimating any views as to the first line of authorities, it is sufficient to say that, in the case at bar, the carrier gave no notice to the shipper of the attachment, and it thereby assumed the burden of establishing the regularity of the proceedings on which the attachment was made. Merz v. Chicago & N. W. R. Co. 86 Minn. 33, 90 N. W. 7; cases cited in note in 34 Am. St. Rep. page 736; Horn v. Corvarubias, 51 Cal. 524; Jewett v. Olsen, 18 Or. 419, 17 Am. St. Rep. 745, 23 Pac. 262, and many authorities, hold that a plea of justification is bad unless it avers the giving of such notice. 2 Hutchinson, Carr. § 743, note 23. None of the answers contained any such averment. That these proceedings were so irregular as to render the writ of attachment void can hardly be questioned. As we have shown, the papers were all filed and the writ of attachment issued on the 4th of January. The summons was not issued until the 6th of January, as shown by its date. Section 8358, Rev. Codes 1905, fixed the commencement of an action in justice court at the time of the issuance of the summons, when no voluntary appearance is made.

and § 8369 provides that a writ of attachment of personal property of the defendant may be issued by the justice at the time or after the issuance of the summons and before answer, on receiving an affidavit by or on behalf of the plaintiff, stating the facts necessary to be stated, as grounds of attachment. It is clear from this provision that the justice acquires no jurisdiction to issue a writ of attachment until the summons is issued, and not having such jurisdiction, the writ issued in the instant case conferred no authority to make the attachment. There must first be an action, and there is no action until the summons is issued. Attachment is a provisional or dependent remedy, and has no existence independent of an action. Gans v. Beasley, 4 N. D. 140, 59 N. W. 714; Smith v. Nicholson, 5 N. D. 426, 67 N. W. 296; Hall v. Grogan, 78 Ky. 11. We hold that the appellant failed to bring itself within the rule referred to, by failing to show that its default was occasioned by the act of the law, and that, in the absence of other considerations, it would be liable for the flax taken by the constable.

3. It is contended that the proof fails to show the value of the flax at the date of the conversion, if there was a conversion. This contention rests upon the assumption that the conversion occurred on the 11th of February, when the demand was made. The proof submitted related to the value of the flax at the date of the delivery to the constable, and this was the date of the conversion.

4. Numerous errors assigned relate to the refusal of the court to allow the defendant to impeach the testimony of the plaintiff's witness Christianson as to statements concerning the ownership of the flax in question. While not pleaded, one theory of the defense in the trial court was that all the flax belonged to Christianson, and that the shipping of it in the name of the respondent had been arranged between Christianson and her for the purpose of defrauding Christianson's creditors. The witness Christianson was inquired of regarding certain statements as to the ownership of the flax raised on respondent's land during the year 1907, and by the questions it was intimated that an attempt would be made to show that he had told other parties that all the flax on both places raised during 1907 belonged to him. He denied making such statements, and the court sustained objections to questions asked the witnesses to whom reference was made in the in-

quiries of Christianson as to his having made them. These questions were apparently excluded on the theory that they were intended to serve as admissions on the part of Christianson as the agent of respondent, and that she should not be bound by such admissions if made. We, however, think their exclusion was error prejudicial to appellant. One of the purposes of the testimony sought to be introduced was to discredit the testimony of Christianson to the effect that a portion of the flax belonged to Miss Taugher. It is clear that evidence of contradictory statements made by him was admissible for this purpose, and its admission might have influenced the jury in arriving at its verdict, provided, there was any evidence to go to the jury as to the ownership of all of the flax by Christianson. The circumstances and the relations of the parties, as shown, were such as to render impeaching testimony on this subject material, and we cannot say that, had it been received, the jury might not properly have found the ownership in Christianson.

5. It is insisted that proof of default in the terms of the mortgage entitling plaintiff to possession of the flax was necessary. We do not concur in this view. If the flax belonged to Christianson, and if respondent held a valid mortgage on it, in the absence of existing liens held at the time of shipment by any of the interested parties, he could legally surrender the flax to her, and authorize her to sell it and apply the proceeds on the mortgage debt, even though no default had occurred in the terms of the mortgage; but even with existing inferior liens they would not have been injured, as its value was less than the debt secured by the mortgage to plaintiff. Lovejoy v. Merchants' State Bank, 5 N. D. 624, 67 N. W. 956. We are not concerned with what the rights of the parties might have been had the defendants been claiming under a subsisting lien at the time of the shipment.

6. It was not error for the trial court to refuse to admit in evidence the summons, undertaking for attachment, writ of attachment, affidavit for attachment, and complaint. They did not tend to prove the facts which they were offered to prove. They tended to show that the summons was not issued until two days after the writ of attachment had been issued, and, for the reasons above stated, the latter was void. Neither was it error to reject the proffered parol evidence. The questions indicated an attempt to show that a mis-

take had been made in dating the summons, and that, in fact, it was issued concurrently with the writ of attachment. Such evidence was inadmissible. Under § 8350, Rev. Codes 1905, the justice is required to keep a docket in which he shall enter in continuous order, with the proper date, each act done during the course of litigation, and by § 8351, the legislature has said that such docket is deemed true and correct in all matters appearing therein as required by law, and cannot be disputed in a collateral proceeding, and that it or a duly certified transcript thereof is competent evidence of the matters to which it relates. Such docket and entries therein of the dates and facts required to be entered were the best evidence, and should have been offered before secondary evidence was admissible. We need not decide whether impeaching evidence would have been admissible had the docket been offered, and had it shown the same dates of issuance given on the papers. No tender was made of such record or a certified transcript thereof as evidence, and its absence was not excused, hence, secondary evidence was incompetent.

The judgment and the order of the district court denying a new trial are reversed and a new trial granted, as to the appealing defendant, the Northern Pacific Railway Company, only.

All concur, ELLSWORTH, J., disqualified, and MORGAN, Ch. J., not participating.